Filed 5/8/14  P. v. Powell CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT JAMES POWELL,<br><br>    Defendant and Appellant. | H039572<br>(Santa Cruz County<br>Super. Ct. No. F22445) |

Defendant Robert James Powell was convicted of possession of methamphetamine for sale.  He challenges the trial court's order denying his motion to suppress controlled substances and drug paraphernalia seized from his vehicle.  Concluding that the search was lawful, we will affirm the judgment.

## I.  TRIAL COURT PROCEEDINGS

Defendant was charged by information with possession of methamphetamine for sale.  (Health & Saf. Code, § 11378.)  The information alleged two prior strike convictions (Pen. Code, § 667, subds. (b)-(i)) and defendant's ineligibility for a county jail sentence (*id*., § 1170, subd. (h)).  Defendant filed a motion to suppress evidence based on an unlawful detention.  The prosecution argued in opposition that the initial contact with defendant was consensual, and that upon learning defendant did not have a driver's license, the officer was justified in searching the vehicle for identification and registration information.  Neither party's pleadings below addressed whether probable

cause supported the eventual search of a cigarette pack, which is the subject of this appeal.

At the suppression hearing, Santa Cruz Police Officer Sergio Venegas testified that he was dispatched to a call on March 13, 2012 regarding possible drug activity. A caller had reported that a black Bronco had been parked in front of his house "off and on for the past week." The caller suspected drug activity because he had observed people approach the Bronco on bicycles, and enter and exit the truck with defendant present. The caller reported that "the back inside of the vehicle seen the same traffic."

Officer Venegas parked a few feet behind the Bronco and approached the truck on foot. Defendant was in the driver's seat on his cell phone, and the engine was running. Officer Venegas identified himself to defendant, explained why he was contacting him, and asked defendant if he had any identification. Defendant responded that he did not have identification because he was unlicensed, and he offered to move the truck. At that point, Officer Venegas decided to search the truck for possible identification and vehicle documents. Officer Venegas told defendant not to move the truck and directed him to step outside.

Before searching the truck, Officer Venegas placed defendant in handcuffs, put defendant in the back of his patrol car, and called for backup. He did this for safety reasons: Defendant was a large man who was possibly dealing drugs and might flee. Officer Venegas told defendant that he was being detained but not arrested, and that he was being placed in handcuffs because of his size.

As defendant stepped out of the Bronco, Officer Venegas noticed a slightly opened box-style cigarette pack in the truck's center console area. Through the opening of the cigarette pack, he saw packaging that he suspected contained drugs. On cross-examination, Officer Venegas described the content of the cigarette pack as "yellow with a Batman symbol on it[,]" but he could not see inside the packaging because it was not transparent.

Officer Venegas returned to the Bronco and took pictures of the center console area. The photographs, which were admitted into evidence, show distinct plastic packaging inside a cigarette pack and a small digital scale on the floorboard. After taking the photographs, Officer Venegas collected the cigarette pack which contained methamphetamine. He also collected the scale, some baggies, and another cigarette pack containing cash. Officer Venegas had not found any identification for defendant before looking inside the cigarette pack.

At the close of evidence, defendant argued to the trial court that his detention became unlawful when Officer Venegas ordered him from the Bronco and placed him in his patrol car in handcuffs. Defendant argued that Officer Venegas should have confirmed his identification without entering his vehicle, and that the proper way to handle the situation would have been to cite defendant for driving without a license, call for a tow truck, and impound the vehicle. He also argued that Officer Venegas's observation of the cigarette pack content was insufficient to lead him to believe it contained drug material. The prosecutor countered that Officer Venegas had the right to search the vehicle for identification, and the cigarette box could have contained a driver's license or California identification card.

The court denied the motion, commenting that defendant's temporary detention was reasonable to allow Officer Venegas to search the vehicle for identifying information as to both the vehicle and defendant "with reasonable safety" and "without concern that the person he's dealing with is going to run off."

Defendant later pleaded no contest to possession of methamphetamine for sale as charged in the information. In exchange, the prosecutor agreed to dismiss the prior strike and to a grant of probation. Consistent with the terms of the plea agreement, the court suspended imposition of sentence for three years and placed defendant on formal probation with conditions including 240 days in county jail. Defendant brings a timely appeal under Penal Code section 1538.5, subdivision (m).

## II.  DISCUSSION

We review the evidence in a light most favorable to the trial court's ruling on the motion to suppress.  (*People v. Long* (1987) 189 Cal.App.3d 77, 82.)  But when the facts are uncontroverted, as here, we face a pure question of law, and we exercise our independent judgment to determine whether, on the facts presented, the search and seizure was reasonable under the Fourth Amendment to the United States Constitution.  (*Ibid.*; *People v. Leyba* (1981) 29 Cal.3d 591, 596-597.)  Because the preliminary hearing transcript was not admitted into evidence at the suppression hearing, we do not consider that transcript in our review.  (*People v. Fisher* (1995) 38 Cal.App.4th 338, 341; *People v. Neighbours* (1990) 223 Cal.App.3d 1115, 1119-1120.)

Now conceding the lawfulness of his detention, defendant focuses his appeal on Officer Venegas's search of the cigarette pack.  Defendant acknowledges that law enforcement may conduct a warrantless search of a vehicle to verify the identity of its occupants and to locate the vehicle's registration if the occupants cannot provide such documents upon request, citing *In re Arturo D*. (2002) 27 Cal.4th 60, 86.  But *In re Arturo D.* confines an identification search to areas and containers where an officer may reasonably expect to locate such documents (*ibid*.), and defendant insists that the cigarette pack search exceeded that scope.  According to defendant, the search cannot be justified because, unlike visors, glove boxes, wallets, purses, and underseat areas, a cigarette pack is not a place where an officer would reasonably expect identification to be located.  Defendant also argues that the search cannot be justified because Officer Venegas actually was looking for drugs.

The Attorney General responds by noting that no cases have addressed whether an officer might reasonably expect to find identification in a cigarette pack, but urges that we need not decide the issue because the cigarette pack search can be upheld under the automobile exception to the Fourth Amendment warrant requirement.  That exception allows for a warrantless search of an automobile when the search is supported by

probable cause to believe the vehicle contains evidence of criminal activity. (*Arizona v. Gant* (2009) 556 U.S. 332, 347, citing *United States v. Ross* (1982) 456 U.S. 798, 820-821.) The Attorney General argues that the search of the cigarette pack was supported by probable cause to believe the vehicle contained contraband.

## A.    THE AUTOMOBILE EXCEPTION IS PROPERLY BEFORE THIS COURT

Relying on *Green v. Superior Court* (1985) 40 Cal.3d 126 (*Green*), defendant argues that the automobile exception cannot be asserted on appeal because the prosecution did not advance that theory as a justification for the search at the suppression hearing, depriving defendant of the opportunity to adduce evidence to defeat that basis for a probable cause determination. We disagree.

In *Green*, after obtaining consent, police seized the defendant's coveralls from a supply area in a parking garage where the defendant worked as a janitor. (*Green*, *supra*, 40 Cal.3d 126, 130-132.) In a fractured opinion, two justices concluded that the defendant was unlawfully in custody when he consented to the seizure, but that the record provided factual support for application of the inevitable discovery doctrine to justify the seizure.[1] (*Id*. at p. 136.) Even though the parties "made only oblique reference to that doctrine at the suppression hearing" (*id*. at p. 137, fn. +8.), the justices allowed the theory as a basis to affirm the trial court's ruling because the evidence was fully developed by the parties in the trial court, and the defendant cross-examined the prosecution's witness regarding the facts which would support an inevitable discovery theory. (*Id.* at p. 138.) The justices concluded that the defendant was not prejudiced by lack of formal notice of the inevitable discovery theory because the record included the factual basis for the

---

[1] The trial court's suppression ruling was upheld because two other justices concluded that the detention was lawful (*Green*, *supra*, 40 Cal.3d at p. 141 (conc. opn. of Lucas, J.)), and the three remaining justices were of the view that the coveralls were seized lawfully and independent from any illegalities involving defendant's custody. (*Id.* at p. 142 (conc. & dis. opn. of Bird, C.J.).)

theory, and it did not appear that further evidence could have been introduced suggesting that the inevitable discovery would have been unlawful. (*Ibid*.)

We likewise conclude on this record that the Attorney General is not precluded from advancing the automobile exception as a basis to uphold the trial court's suppression ruling. We recognize that the automobile exception was not the focus of the suppression hearing. Indeed, the trial court made no mention of the cigarette pack search, much less the automobile exception, in its oral ruling. But defendant provided no notice that he was challenging the scope of the search on any basis other than as the fruit of an unlawful detention. Defendant's notice of motion stated: "The defendant moves the court to suppress the aforementioned evidence on the grounds that he was detained by law enforcement officers, acting without reasonable cause … ." In his supporting memorandum of points and authorities, defendant asserted that he was unreasonably detained because Officer Venegas did not have specific articulable facts giving rise to a reasonable suspicion that he was violating the law. Defendant concluded: "Because the Detention was Unsupported by Law, Any Evidence Flowing From it Must be Suppressed." The prosecutor's opposition addressed the basis for the detention and not any independent justification for searching the cigarette pack.

"[U]nder section 1538.5, as in the case of any other motion, defendants must specify the precise grounds for suppression of the evidence in question, and, where a warrantless search or seizure is the basis for the motion, this burden includes specifying the inadequacy of any justifications for the search or seizure. In the interest of efficiency, however, defendants need not guess what justifications the prosecution will argue. Instead, they can wait for the prosecution to present a justification." (*People v. Williams* (1999) 20 Cal.4th 119, 130.) However, "[d]efendants need only be specific enough to give the prosecution and the court reasonable notice." (*Id*. at p. 131.) The purpose of this notice is to alert the prosecution of the need to offer evidence on the issues raised, since the prosecution has the burden of proof as to the legality of the search or seizure. (*Id*. at

p. 130.)  Failure to have identified an issue will therefore preclude a defendant from raising it on appeal.  (*Id*. at p. 136.)

If we were to rely solely on the written suppression motion, defendant would be precluded from challenging the cigarette pack search as exceeding the scope of a proper identification search because that issue was not raised in his moving papers.  But *Williams* does not require a defendant to anticipate the prosecution's justifications for a search; a defendant may wait until after the hearing to challenge the prosecution's justification (*Williams*, *supra*, 20 Cal.4th at p. 134), which is what happened in this case.

At the conclusion of the suppression hearing, in addition to arguing that his detention was unlawful, defendant asserted that the partially opened cigarette pack was not evidence of contraband.  He argued that the plastic material "could have been any number of things.  …  There was nothing that looked like marijuana, nothing that looked like any kind of white powder on the outside of this container that would lead [Officer Venegas] to believe it was drug material."  He concluded:  "[B]efore even opening that cigarette box, there's just no evidence this is drug paraphernalia that warrants being seized and it should [*sic*] lead to arrest of [defendant]."  Defendant's closing remarks are significant because, under *Williams*, they put the prosecution on notice that defendant was challenging, in addition to the lawfulness of the detention, the justification for the cigarette pack search.  Accordingly, defendant adequately raised the issue below and may raise the issue on appeal.

But defendant's closing remarks also are significant because they undercut the assertion that he had no opportunity before the trial court to adduce evidence to counter the applicability of the automobile exception.  Officer Venegas was examined about the reporting party's call, and about his discovery, impressions, and seizure of the cigarette pack.  Although the automobile exception was not an express focus of the suppression hearing, the officer's examination addressed the basis for the exception, namely, whether probable cause exists to believe a vehicle contains evidence of criminal activity.  Having

developed an adequate evidentiary record, defendant demonstrates no prejudice under *Green* from the prosecution's failure to identify the automobile exception at the suppression hearing.[2]  Accordingly, the Attorney General is not precluded from advancing on appeal the automobile exception as a justification for the cigarette pack search.

**B.   PROBABLE CAUSE SUPPORTS THE CIGARETTE PACK SEARCH UNDER THE AUTOMOBILE EXCEPTION**

The automobile exception allows for a warrantless search of an automobile when the search is supported by probable cause to believe that the vehicle contains evidence of criminal activity.  (*Arizona v. Gant* , *supra*, 556 U.S. at p. 347.)  Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found."  (*Ornelas v. United States* (1996) 517 U.S. 690, 696.)  The probable cause standard requires "[a] 'practical, nontechnical' probability that incriminating evidence is involved … ."  (*Texas v. Brown* (1983) 460 U.S. 730, 742.)  The standard does not demand a showing that a belief be more likely true than false.  (*Ibid*.)

A police officer may factor into a probable cause determination information reported by a private citizen.  (*People v. Ramey* (1976) 16 Cal.3d 263, 269 (*Ramey*).)  Private citizens "volunteer their information fortuitously, openly, and through motives of good citizenship"; therefore, as a general proposition the information they provide should be considered reliable.  (*Ibid*.)  While conclusory information provided by private citizens will not establish probable cause, "neither a previous demonstration of reliability nor

---

[2] Although we have not considered it in our evaluation of the motion to suppress, having reviewed the September 12, 2012 preliminary hearing transcript we note on the issue of prejudice that it does not appear additional evidence could have been introduced to defeat the application of the exception.  (See *Green*, *supra*, 40 Cal.3d 126 at p. 138.)  Officer Venegas testified at that hearing on direct examination about his experience in narcotics cases and on cross-examination about having no additional information from the party who reported suspicious activity in front of his home.

subsequent corroboration is ordinarily necessary when witnesses to … criminal activities report their observations in detail to the authorities." (*Ibid*.)

Citing *People v. Chapman* (1990) 224 Cal.App.3d 253, *People v. Nonnette* (1990) 221 Cal.App.3d 659, and *Texas v. Brown*, *supra*, 460 U.S. 730, defendant argues that probable cause for the warrantless search of the cigarette pack is lacking because Officer Venegas's belief that the bag contained contraband is pure conjecture and because the citizen's information is conclusory and uncorroborated. Defendant also argues that the discovery of the scale cannot be factored into the probable cause determination because, although Officer Venegas photographed the scale before seizing the cigarette pack, he did not realize that the object photographed was a scale until after he seized the cigarette pack. We agree that probable cause cannot be justified on grounds unknown to the officer at the time of the search (*Green*, *supra*, 40 Cal.3d 126, 137), and we therefore do not consider the scale in our analysis.

In *People v. Chapman*, *supra*, 224 Cal.App.3d 253, 259, the court found unlawful the search of a small metal case on the floorboard of an automobile. The officer suspected the container, which looked like a woman's makeup compact, held contraband because of his experience with other similar cases. (*Id*. at pp. 257, 258.) The court explained that a container's "shape, design, and the manner in which it is carried" may provide probable cause that it contains contraband, and noted examples of inherently suspicious containers such as a folded square paper bindle falling from a wallet, a heroin balloon, or a brick-shaped package smelling of marijuana. (*Id*. at pp. 257-258.) But *Chapman* concluded that the compact-type container was not inherently suspicious. Instead, it was similar to a pill bottle, a pack of cigarettes, or a plastic bag in that it was not a distinctive drug carrying item, " 'which may *not* be seized merely because it may also be commonly used to store narcotics.' " (*Id*. at p. 258, italics in original.)

In *People v. Nonnette*, *supra*, 221 Cal.App.3d 659, 665 (*Nonnette*), the court upheld the search of an open clutch purse in the map pocket behind the passenger seat.

The officer observed a bundle of tiny empty bags which he knew were a type used for drugs, and a prescription bottle in plain view in the open purse. (*Id*. at p. 663.) The vehicle was also parked in a high drug activity area and the driver told the officer that he was visiting a friend whose house was located about 30 minutes away. (*Id*. at pp. 662-663.) The officer's observation of the bundle of baggies weighed heavily in the *Nonnette* court's probable cause determination. *Nonnette* concluded that the bundle of baggies was inherently suspicious and that there was no need for a foundation explaining the basis of the officer's suspicions about the bundle. (*Id*. at pp. 667-668.)

In *Texas v. Brown*, *supra*, 460 U.S. 730, 733, during a routine traffic stop an officer observed a driver holding an opaque, green party balloon knotted about one-half inch from the tip. The officer also saw several small plastic vials, loose white power, and an open bag of balloons in the open glove compartment. (*Id*. at p. 734.) In upholding the probable cause determination, the Supreme Court considered the vials of white powder in the glove compartment, as well as the distinctive character of the tied-off balloon, and the officer's belief, based on his past experience, that the balloons contained narcotics. (*Id*. at pp. 742-743.)

Here, in addition to establishing a lawful detention, the facts adduced at the suppression hearing establish probable cause for Officer Venegas to search the cigarette pack. Officer Venegas was responding to a call by a citizen who suspected that defendant was selling drugs from his truck in front of the caller's home. The caller, who provided his residential address, reported that defendant had been parked in front of his home off and on for several days. The caller described the type of vehicle (a Bronco) and what the man in the vehicle was wearing. The caller had observed people approach defendant's Bronco on bicycles, enter the truck with defendant, and then leave. The caller reported that the back of the truck had seen the "same traffic." While we recognize that the caller did not describe any hand-to-hand drug buys or actual drug use in defendant's Bronco, the information provided by the caller was specific enough to be

factored into the probable cause equation, and it was reasonable for Officer Venegas to rely on the information.  (*Ramey*, *supra*, 16 Cal.3d at p. 269.)

As defendant emerged from his truck, Officer Venegas observed, in plain view, a partially open cigarette pack containing small yellow baggies.  He described the content of the cigarette pack as "drug packaging" "with a Batman symbol on it."  He suspected the baggies contained drugs.  Although a cigarette pack itself is not inherently suspicious, the pack here was partially opened and no cigarettes were in view.  The packaging described by Officer Venegas, and shown in the photograph admitted into evidence, is distinguishable from common containers such as the pill bottle, makeup compact, standard size clear plastic bag, or film canister referenced in *Chapman*.  The packaging is distinctive in its small size and its lack of transparency, and the record contains no evidence of any common use for this type of container within a cigarette package.

In our view, the baggie is similar to the small paper bindle which our Supreme Court recognized as inherently distinctive to a police officer.  (*Chapman*, *supra*, 224 Cal.App.3d at p. 257, citing *People v. Lilienthal* (1978)22 Cal.3d 891, 898-899.)  We reject defendant's position that Officer Venegas's suspicion was unfounded because he failed to explain why he thought the packaging was suspicious.  Officer Venegas's belief was based not only on the distinctive packaging, but also on the information provided by the resident of the home.  Further foundation for the officer's belief is unnecessary here.  (*Nonnette*, *supra*, 221 Cal.App.3d 659, 668.)

While we recognize that *Chapman*, *Nonnette*, and *Brown* may present more indicia of probable cause than the facts presented here, we conclude that the probable cause standard has been met.  A person of reasonable prudence in Officer Venegas's position, aware of the private citizen's report of possible drug activity and observing a cigarette pack containing unusual plastic packaging, has probable cause to believe that drugs would be found in the cigarette pack.  Officer Venegas was justified in searching

the cigarette pack and, upon discovering that it contained contraband, to search the vehicle for further evidence of drug-related criminal activity.

### III.  DISPOSITION

The judgment is affirmed.


_____

Grover, J.


**WE CONCUR:**


_____

Elia, Acting P.J.


_____

Mihara, J.