Filed 12/15/14  P. v. Fisher CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>DAVID FISHER,<br><br>      Defendant and Appellant. | B250730<br><br>(Los Angeles County<br>Super. Ct. No. BA402305) |

APPEAL from an order of the Superior Court of Los Angeles County, Norman J. Shapiro, Judge.  Affirmed.

Karen Hunter Bird, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

David Fisher appeals from the order revoking his Proposition 36 probation and sentencing him to a two-year state prison term for his underlying conviction of possession of cocaine.  Fisher contends the evidence was insufficient to support the finding he had violated his probation and the trial court abused its discretion and violated his due process rights in declining to reinstate probation and sentencing him to state prison.  We affirm both the order revoking probation and the court's sentencing decision.

## FACTUAL AND PROCEDURAL BACKGROUND

1.  *Fisher's Prior Possession of Cocaine Conviction and the Subsequent Charge of Selling Cocaine Base*

In September 2012, Fisher was charged in a felony complaint with one count of possession of cocaine (Health & Saf. Code, § 11350, subd. (a)) with a special allegation he had served three separate prison terms for felonies (Pen. Code, § 667.5, subd. (b)).[1] On September 11, 2012, Fisher pleaded guilty to possession of cocaine.  The trial court suspended imposition of his sentence and placed Fisher on one year of formal probation under the terms and conditions of Proposition 36.

The trial court summarily revoked Fisher's Proposition 36 probation at the People's request following his arrest for selling cocaine base on March 9, 2013.  The probation revocation hearing was continued pending resolution of the underlying criminal charge of selling cocaine base.  The jury trial in the criminal charge ended in a mistrial. The parties agreed the bench officer who had presided over the trial would determine whether Fisher had violated his Proposition 36 probation based upon the evidence presented at trial.  The People also agreed to dismiss the charge of selling cocaine base regardless of the outcome of the probation revocation hearing.

2. *The Evidence at Trial on the Charge of Selling Cocaine Base*

Los Angeles Police Officer Jesus Toris testified that on the night of March 9, 2013, he and his partner officer were near San Julian Park in downtown Los Angeles, an area known for violent crimes and hand-to-hand narcotics transactions.  Through the

---

[1]     Statutory references are to the Penal Code, unless otherwise indicated.

wrought iron fence surrounding the park and approximately 30 yards away, Toris saw Fisher standing on a corner of San Julian and Fifth Streets. Fisher was wearing gray sweat pants and a gray sweater with a hood and a front pocket. Toris's view of Fisher was unobstructed by trees, and there was ambient light from corner street lights and lights around the sidewalk.

As Toris watched, two unidentified men approached Fisher separately, about five minutes apart. Each man spoke briefly with Fisher, accompanied him down Fifth Street and stopped near a portable restroom. Fisher and his companion were illuminated by a light above the restroom and two nearby streetlights. Toris saw each man give Fisher some paper currency, which Fisher put in the front pocket of his sweater. Fisher then retrieved an unknown object from the back of his waistband and handed it to his companion, who examined the object and departed. The first man put the object in his mouth before walking away. Following each interaction, Fisher returned to the corner of San Julian and Fifth Streets.

As Toris continued to watch, a third man, later identified as Caral Schaffer, approached Fisher five minutes later. The two men shook hands, hugged each other and stood together on the corner. Schaffer gave Fisher some paper currency, which Fisher put in the front pocket of his sweater. Fisher retrieved an unknown object from the back of his waistband and handed it to Schaffer. Schaffer put the object in his front pants pocket and walked away.

Suspecting Fisher and Schaffer had engaged in a drug transaction, Officer Toris detained Schaffer and recovered .27 grams of cocaine base from Schaffer's front pants pocket and arrested him. Toris then detained Fisher, found $165 in crumpled currency in the front pocket of Fisher's sweater and arrested him for selling cocaine base. No drugs were found on Fisher.

Fisher did not testify in his defense. He presented the testimony of Sonya Miramontes, a program director with the department of public service, who said Fisher had withdrawn $202.13 in cash from his public assistance account on the evening of

March 8, 2013, at a store on Fifth Street. The defense also called Schaffer who testified he did not purchase cocaine base from Fisher; he did not know the person who had sold him the drug. Schaffer denied having identified the person from whom he had bought the drug as "the guy wearing all gray." Instead, Schaffer had merely told police he had "bought it from the guy."

In rebuttal, Officer Toris testified Schaffer had said he had bought the cocaine from "the guy, the one wearing all gray." According to Toris, apart from Fisher, no one else on the corner of San Julian and Fifth streets was wearing all gray on the night of March 9, 2013.

### 3. *The Probation Revocation Hearing*

No additional evidence was presented at the probation revocation hearing, which was held on August 8, 2013, two days after the jury deadlocked 11-to-1 in favor of not guilty, and a mistrial was declared in the criminal trial. After giving the prosecutor and Fisher's counsel an opportunity to argue, the trial court found Fisher in violation of his Proposition 36 probation.

Turning to sentencing, the trial court requested input from the defense and the People, including an experienced prosecutor not assigned to the case, who opined Fisher was no longer eligible for Proposition 36 probation and a state prison sentence was appropriate. Defense counsel maintained Fisher was still eligible for, and should be reinstated on, Proposition 36 probation unless the court found he was not amenable to drug treatment. Alternatively, counsel requested that Fisher be sentenced to one year in county jail, with credit for time served, and granted probation so he could seek an out-of-state transfer of supervision to Louisiana (New Orleans), where Fisher wished to return.

The trial court declined to reinstate Fisher on Proposition 36 probation, terminated probation and imposed the middle term of two years in state prison for possession of cocaine. The court dismissed the underlying charge of selling cocaine base.

4

**DISCUSSION**

1. *Substantial Evidence Supports the Decision To Revoke Probation*

A court may revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her probation . . . ." (§ 1203.2, subd. (a); see *People v. Galvan* (2007) 155 Cal.App.4th 978, 981; *People v. Stanphill* (2009) 170 Cal.App.4th 61, 72.) We review a decision to revoke for substantial evidence (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681), according great deference to the trial court's ruling, "bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.'" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773; accord, *People v. Pinon* (1973) 35 Cal.App.3d 120, 123.) "Before a defendant's probation may be revoked, a preponderance of the evidence must support a probation violation." (*People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1197; accord, *People v. Rodriguez* (1990) 51 Cal.3d 437, 447 [standard of proof for finding probation violation is preponderance of the evidence].)

Fisher contends, because Officer Toris's trial testimony was uncorroborated and inherently improbable and the jury deadlocked 11-to-1 in favor of a not guilty verdict, the evidence was insufficient to support the trial court's finding of a probation violation.

Here, as discussed, the same judge presided at the trial on the charge of selling cocaine base and the probation revocation hearing. The evidence before the court, while not sufficient to persuade the jury to find Fisher guilty under the beyond-a-reasonable-doubt standard of proof, supported the finding by a preponderance of the evidence that he had in fact sold cocaine base and thus violated his Proposition 36 probation. The court explained it found Officer Toris's trial testimony of the hand-to-hand drug transaction between Fisher and Schaffer to be reliable and rejected as not credible Schaffer's

5

disavowal of his pretrial statement identifying Fisher as the seller.[2] The court's credibility determination was uniquely its own to make and was sufficient to support the finding that Fisher had violated his probation. (See *People v. Lee* (2011) 51 Cal.4th 620, 632 ["'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.'"])

Toris's testimony was uncorroborated; but a single witness's testimony is sufficient to support a conviction, unless it is physically impossible or inherently improbable. (*People v. Young* (2005) 34 Cal.4th 1149, 1181; Evid. Code, § 411.) Fisher maintains it was physically impossible for Toris to have seen a hand-to-hand sale through a wrought iron fence, at night and from a distance of 30 yards away. However, Toris consistently testified he had an unobstructed view of Fisher with enough illumination to see him engage in drug transactions, which the trial court believed. No more was required.

2. *Terminating Proposition 36 Probation and Imposing a State Prison Sentence Was Not a Violation of Due Process or an Abuse of Discretion*

Proposition 36 (§ 1210 et seq.) is intended to enable repeat low-level felony drug offenders to avoid incarceration and benefit from rehabilitation. (*People v. Taylor* (2003) 105 Cal.App.4th 1394, 1397.) It provides a statutory scheme in which a defendant convicted of a nonviolent drug possession offense generally receives probation — rather

---

[2] In the words of the trial court, "Well, I'll tell you, then, frankly, when Mr. S[c]haffer testified—and I have it in my notes here with a star by it. On cross-examination: 'I never told the police all gray'—meaning the clothing worn by—said 'I bought it from the guy.' [¶] Now it was at the point that I began to doubt Mr. S[c]haffer, because—and it's almost you had to be there to hear it—that when S[c]haffer says, 'I bought it from the guy,' he didn't specify and it just didn't make sense." The court expressed doubt that Schaffer would have simply said to police, "I got it from the guy" without adding a descriptor of the guy to which he was referring, "got it from the guy in gray; got it from the guy over there; got it from the big guy; got it from the little guy."

6

than prison or jail terms — but with the condition of completing a drug treatment program. (*People v. Castagne* (2008) 166 Cal.App.4th 727, 732; *In re Delong* (2001) 93 Cal.App.4th 562, 566.) Anticipating that drug users frequently suffer initial setbacks in their recovery from addiction, Proposition 36 gives defendants several opportunities for reinstatement on probation when they violate a drug-related condition of probation or commit another nonviolent drug possession offense. (§ 1210.1; *People v. Dagostino* (2004) 117 Cal.App.4th 974, 987; *People v. Davis* (2003) 104 Cal.App.4th 1443, 1447-1448.) Only upon a third such violation of probation does the trial court regain its discretion to incarcerate the defendant. (§ 1210.1, subds. (f)(3)(A)-(F); *People v. Davis*, *supra*, 104 Cal.App.4th at p. 1448.)

Different rules apply under Proposition 36 when the probation violation is either not a nonviolent drug possession offense, as in this case, or a non-drug-related condition of probation. (*People v. Martinez* (2005) 127 Cal.App.4th 1156, 1162.) Section 1210.1, subdivision (f)(1) provides the trial court may revoke probation under Proposition 36 if a probation violation is proven; the defendant may then "be incarcerated pursuant to otherwise applicable law without regard to the provisions of this section." Section 1201.1, subdivision (f)(2) gives the court discretion to determine whether to reinstate a defendant's probation, to modify a defendant's probation terms, or to revoke probation and order the defendant incarcerated. "At that point, the defendant stands in the same shoes as any other probationer and he is subject to whatever sentencing statutes bear on his sentencing." (*People v. Dixon* (2003) 113 Cal.App.4th 146, 153-154.)

Fisher argues the trial court failed to exercise informed discretion in sentencing him to state prison rather than reinstating him on probation, resulting in a violation of his right to due process. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228 [defendants are entitled to sentencing decision exercised with informed discretion, which does not occur where court is unaware of scope of discretionary powers].) According to Fisher, the court misunderstood its sentencing options under Proposition 36 and was misled by the prosecutor's erroneous assertion Fisher was ineligible for reinstatement on

7

Proposition 36 probation and defense counsel's suggestion Fisher could not be reinstated if he were found unamenable to drug treatment. Fisher's claim is unavailing.

It is true the trial court initially inquired of counsel whether Fisher was entitled to be reinstated on probation under Proposition 36. However, the record demonstrates the court knew and understood its discretionary authority under section 1210.1, subdivision (f). Prior to sentencing Fisher, the court reviewed his criminal record, noting that following his Louisiana battery conviction in 2002, Fisher had California felony convictions in 2007 for possession of cocaine base for sale, in 2008 and 2009 for sale of a controlled substance and in 2010 for possession of marijuana for sale before his most recent conviction in 2012 for possession of cocaine and placement on Proposition 36 probation. For every drug conviction, Fisher was sentenced to formal probation, which he then violated with a new drug offense that resulted in his probation being revoked and reinstated. This pattern continued until 2010, when Fisher's probation was revoked and terminated in all cases and he was sentenced to a two-year state prison term for possession of marijuana for sale.[3] The court concluded in view of Fisher's criminal history and the purpose of Proposition 36 probation, he was not amenable to drug treatment and thus not a suitable candidate for reinstatement. The court then advised Fisher he could be sentenced either to local custody, with a grant of probation, or to state prison. The court ultimately decided to impose the two-year middle term.[4] Fisher was afforded due process at the revocation hearing. (Compare with *People v. Bolian* (Dec. 2, 2014, B252794) __ Cal.App.4th __ [2014 Cal.App. Lexis 1094] [where it was clear the trial court erred because it misunderstood the scope of its discretion].)

Additionally, the trial court's refusal to reinstate probation was not an abuse of discretion. "The sentencing court has broad discretion to determine whether an eligible

---

[3] The court also mentioned Fisher's misdemeanor convictions for inflicting corporal injury on a cohabitant in 2006 and 2007, driving without a valid license in 2009 and 2010 and assaulting a peace officer in 2010.

[4] Fisher does not challenge the trial court's selection of the two-year middle term.

defendant is suitable for probation and, if so, under what conditions." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120; Cal. Rules of Court, rule 4.414.[5]) To establish an abuse of discretion, the defendant must show that, under all the circumstances, the denial of probation was arbitrary, capricious or exceeded the bounds of reason. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 834-835; see also *People v. Carmony* (2004) 33 Cal.4th 367, 377.) Here, the court gave a reasoned explanation for its refusal to reinstate probation, resting its decision on Fisher's prior record of primarily drug sale offenses (rule 4.414(b)(1)) and his prior poor performance on probation (rule 4.414(b)(2)) as well as Proposition 36's goal of reforming those drug offenders who engage in personal use. The termination of probation in these circumstances was not an abuse of discretion.

3. *The Failure To Obtain a Supplemental Probation Report Does Not Invalidate the Sentence*

The trial court must order a probation report when a person is convicted of a felony and eligible for probation. (See § 1203, subd. (b)(1).) Consistent with section 1203, a probation report was prepared for the original sentencing hearing on September 11, 2012. Further, "[s]tatutory authority and the California Rules of Court specify the circumstances under which the trial court must prepare a supplemental or updated report." (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 181.) Specifically, section 1203.2, subdivision (b), requires "referral to the probation officer, preparation of a written report, and its consideration by the court upon a petition for revocation of probation." (*Ibid.*) In addition, "[t]he court must order a supplemental probation officer's report in preparation for sentencing proceedings that occur a significant period of time after the original report was prepared." (Rule 4.111(c).)

In this case, the lapse of time between the probation report in September 2012 and Fisher's sentencing following revocation of probation in August 2013 is a "significant period of time." (See *People v. Dobbins, supra,* 127 Cal.App.4th at p. 181 [period of six

---

5    Rule references are to the California Rules of Court.

months may constitute a significant period of time requiring preparation of a supplemental probation].)  Moreover, Fisher was not "under the watchful eyes of custodial authorities throughout this period," but was released on probation in September 2012 until he was arrested on March 9, 2013 for selling cocaine base and his probation was revoked.  (See *ibid.*)

Nonetheless, the failure to obtain a supplemental probation report was harmless.  Fisher did not request a supplemental probation report before his resentencing and on appeal does not identify any favorable information that might have affected the opinion of the court had a supplemental report been prepared.  The judge who presided over revocation hearing and sentencing "was [ ] intimately acquainted with the facts underlying his violation of probation," having also presided over the jury trial on the underlying criminal charge, so a supplemental report was not necessary in that regard. (*People v. Dobbins, supra,* 127 Cal.App.4th at p. 183.)  Fisher's multiple felony drug convictions and pattern of prior probation violations provided little justification for another grant of probation.[6]  In sum, the error in failing to order a supplemental probation report was harmless because it is not reasonably probable Fisher would have obtained a more favorable result had the report been prepared.  (*Id.* at p. 182; see *People v. Watson* (1956) 46 Cal.2d 818, 834-836.)

## DISPOSITION

The order revoking probation and imposing a two-year state prison sentence is affirmed.


                                                                                            **WOODS, J.**

**We concur:**

     **PERLUSS, P. J.**                                                              **ZELON, J.**

---

[6]    We disagree with the People's assertion the failure to order a supplemental probation report was harmless error because Fisher was presumptively ineligible for probation.  Fisher was statutorily eligible for probation, albeit upon a showing under section 1203, subdivision (e)(4) "that the interests of justice would best be served."

10